## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

LESLIE P.[1],                                   Case No. 2:22-cv-3454
      Plaintiff,                           Litkovitz, M.J.

      vs.

COMMISSIONER OF                         **ORDER**
SOCIAL SECURITY,
      Defendant.

      Plaintiff Leslie P. brings this action under 42 U.S.C. § 405(g) for judicial review of the

final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's

application for disability insurance benefits (DIB) before August 15, 2016.  This matter is before

the Court on plaintiff's Statement of Errors (Doc. 8) and the Commissioner's response in

opposition (Doc. 9).

## I.  Procedural Background

      This is plaintiff's second case before this Court.  On May 10, 2010, plaintiff protectively

filed an application for DIB alleging disability beginning December 12, 2009, due to

fibromyalgia, multiple joint arthritis, brittle diabetes impairment, diabetes neuropathy, and

depression.  (Tr. 141-52, 170).  Her application was denied initially and upon reconsideration.

Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law

judge Mary F. Withum (ALJ Withum).  Plaintiff and a vocational expert (VE) appeared and

testified at the ALJ hearing on June 21, 2012.  (Tr. 30-58).  On August 9, 2012, ALJ Withum

issued a decision denying plaintiff's applications.  (Tr. 10-27).  The Appeals Council denied

---

[1] Under General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment, or other disposition in social security cases in the Southern District of Ohio will refer to plaintiffs only by their first names and last initials.

plaintiff's request for review, making the ALJ's decision final for purposes of judicial review. (Tr. 1-5).

After an appeal to this Court, the matter was remanded to the Commissioner for further proceedings. *See Leslie P. v. Comm'r of Soc. Sec.*, No. 2:14-cv-032 (S.D. Ohio). (Tr. 572-88). A second hearing was held on August 31, 2015, before ALJ Gregory Kenyon. (Tr. 514-45). ALJ Kenyon denied plaintiff's application on November 16, 2015. (Tr. 599-621).

The Appeals Council granted plaintiff's request for review and remanded the matter for further proceedings. (Tr. 622-27). A subsequent hearing was held before ALJ Kenyon on April 19, 2018. (Tr. 485-513). ALJ Kenyon issued a decision finding plaintiff was disabled as of August 15, 2016 but not before this date. (Tr. 453-84). This decision became the final decision of the Commissioner when the Appeals Council denied review on July 19, 2022. (Tr. 432-39).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

## B. The Administrative Law Judge's Findings

ALJ Kenyon applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] met the insured status requirements of the Social Security Act through December 31, 2016 (20D).

2. The [plaintiff] has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 *et seq.*).

3. Since the alleged onset date of disability, December 12, 2009, the [plaintiff] has had the following severe impairments: fibromyalgia, degenerative disc disease (DDD) of lumbar spine, arthritis of the hips, diabetes mellitus (DM) with

3

neuropathy, degenerative joint disease (DJD) of right knee, depression, and an anxiety disorder (20 CFR 404.1520(c)).

4. Since the alleged onset date of disability, December 12, 2009, the [plaintiff] has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the [ALJ] finds that since December 12, 2009, the [plaintiff] has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: (1) occasional crouching, crawling, kneeling, stooping, and climbing of ramps and stairs: (2) no climbing of ladders, ropes, and scaffolds: (3) no work around hazards such as unprotected heights or dangerous machinery; (4) occasional overhead reaching; (5) limited to jobs in which she would be permitted to sit for a total of fifteen minutes per hour for a total of two hours per day; (6) limited to performing unskilled, simple, repetitive tasks; [(7)] occasional contact with coworkers, supervisors, and members of the general public; [(8)] no fast paced production work or jobs involving strict production quotas; and [(9)] limited to performing jobs which involve very little, if any, change in the job duties or the work routine from one day to the next.

6. Since December 12, 2009, the [plaintiff] has been unable to perform any past relevant work (20 CFR 404.1565).[2]

7. Prior to the established disability onset date, the [plaintiff] was a younger individual age 18-49.  On August 15, 2016, the [plaintiff]'s age category changed to an individual of advanced age (20 CFR 404.1563).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Prior to August 15, 2016, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled" whether or not the [plaintiff] has transferable job skills.  Beginning on August 15, 2016, the [plaintiff] has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Prior to August 15, 2016, the date the [plaintiff]'s age category changed, considering the [plaintiff]'s age, education, work experience, and residual functional

---

[2] Plaintiff's past relevant work was as a waitress, administrative clerk, and furniture salesperson, all semi-skilled, light exertion positions; a customer order clerk, a semi-skilled, sedentary position; and an administrative assistant, a skilled, sedentary exertion position.  (Tr. 473-74, 507-08).

capacity, there were jobs that existed in significant numbers in the national economy that the [plaintiff] could have performed (20 CFR 404.1569 and 404.1569a).[3]

11. Beginning on August 15, 2016, the date the [plaintiff]'s age category changed, considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the [plaintiff] could perform (20 CFR 404.1560(c) and 404.1566).

12. The [plaintiff] was not disabled prior to August 15, 2016, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g)).

(Tr. 460-75).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill,* __ U.S. __, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

---

[3] The ALJ relied on the VE's testimony to find that plaintiff could perform the requirements of representative light, unskilled occupations such as routing clerk (80,000 jobs nationally), marking clerk (300,000 jobs nationally), and inspector (60,000 jobs nationally). (Tr. 474-75, 509).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

As indicated above, the ALJ found plaintiff to be disabled on August 15, 2016 but not before that date. On appeal, plaintiff raises three assignments of error directed to the previous period: 1) the ALJ erred in weighing the opinions of her treating psychiatrist, Adam Brandemihl, M.D., and the consultative examiner, George O. Schulz, Ph.D.; (2) the ALJ has not provided substantial evidence for his rejection of plaintiff's subjective report of symptoms; and (3) the ALJ posed an improper hypothetical question to the vocational expert. (Doc. 8).[4]

**1. Weight to Medical Source Opinions**

A treating source's medical opinion must be given controlling weight if it is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. §

---

[4] Plaintiff's assignment of errors are directed solely at her mental health impairments. Therefore, any argument on the effects of her physical impairments is deemed waived. *See Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013) ("This court has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived.") (citation omitted).

404.1527(c)(2) ; *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).[5]  If

a treating source's medical opinion is not entitled to controlling weight, the ALJ must apply the

following factors in determining what weight to give the opinion: the length of the treatment

relationship and the frequency of examination, the nature and extent of the treatment relationship,

supportability of the opinion, consistency of the opinion with the record as a whole, and the

specialization of the treating source.  *Wilson*, 378 F.3d at 544.  *See also Blakley*, 581 F.3d at 408

("Treating source medical opinions [that are not accorded controlling weight] are still entitled to

deference and must be weighed using all of the factors provided in" 20 C.F.R. § 404.1527(c)

(quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4).[6]  In addition, an ALJ must "give good

reasons in [the] notice of determination or decision for the weight [given to the claimant's]

treating source's medical opinion."  20 C.F.R. § 404.1527(c)(2).  The ALJ's reasons must be

"supported by the evidence in the case record, and must be sufficiently specific to make clear to

any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion

and the reasons for that weight."  *Gayheart*, 710 F.3d at 376 (citing Soc. Sec. Rul. 96-2p, 1996

WL 374188, at *5).  This requirement serves a two-fold purpose: (1) it helps a claimant to

understand the disposition of her case, especially "where a claimant knows that h[er] physician

has deemed h[er] disabled," and (2) it "permits meaningful review of the ALJ's application of the

[treating-source] rule."  *Wilson*, 378 F.3d at 544.

Dr. Brandemihl completed a Psychiatric/Psychological Impairment Questionnaire on April

5, 2012.  (Tr. 394-401).  He reported plaintiff's diagnoses as major depression, panic disorder,

---

[5] New regulations apply to the evaluation of medical evidence for claims filed on or after March 27, 2017.  *See* 20 C.F.R. § 404.1520c; Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819.  Here, though, the Court applies the prior regulations to plaintiff's May 2010 DIB application.

[6] SSR 96-2p was rescinded effective March 27, 2017.  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5845.  Because the Court applies the prior rules here, SSR 96-2p remains applicable.  *See Shields v. Comm'r of Soc. Sec.*, 732 F. App'x 430, 437 n.9 (6th Cir. 2018).

and generalized anxiety disorder and assessed her prognosis as guarded. (Tr. 394). Dr. Brandemihl listed clinical signs and symptoms of poor memory, appetite disturbance with weight change, sleep disturbance, mood disturbance, recurrent panic attacks, anhedonia or pervasive loss of interests, feelings of guilt/worthlessness, difficulty thinking or concentrating, social withdrawal or isolation, blunt, flat, or inappropriate affect, decreased energy, generalized persistent anxiety, and somatization unexplained by organic disturbance. (Tr. 395). Diagnostic findings included mental status examination results. (*Id*.). He noted plaintiff's primary symptoms included dysphoria, panic, worry, and memory problems. (Tr. 396).

Dr. Brandemihl opined that plaintiff was markedly limited in her ability to remember locations and work-like procedures; understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; complete a normal workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in the work setting; travel to unfamiliar places or use public transportation; and set realistic goals or make plans independently. (Tr. 396-99). Dr. Brandemihl found plaintiff was moderately limited in her ability to sustain an ordinary routine without supervision; work in coordination with or proximity to others without being distracted by them; make simple work related decisions; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and be aware of normal hazards and take appropriate precautions. (*Id.*).

8

Dr. Brandemihl also opined that plaintiff experienced episodes of deterioration or decompensation in work or work-like settings that caused her to withdraw from that situation and/or experience an exacerbation of signs and symptoms because of increased panic, anxiety, and dysphoria. (Tr. 399). Her conditions were expected to last for at least 12 months. (Tr. 400). Dr. Brandemihl opined that plaintiff was not a malingerer, and her psychiatric conditions exacerbated her fibromyalgia symptoms. Dr. Brandemihl concluded that plaintiff was incapable of handling even low stress work due to anxiety and panic. (*Id.*). Dr. Brandemihl opined that plaintiff's symptoms and limitations began in 2006. (Tr. 401).

The ALJ assigned "little weight" to Dr. Brandemihl's opinion, finding it is not supported by the progress notes documenting allegedly mild abnormalities and "slight improvement" with treatment. (Tr. 464, citing Tr. 403-408, 410-417, 882-888, 890). The ALJ also determined that Dr. Brandemihl's opinion is inconsistent because it stated that plaintiff had symptoms and limitations since 2006 but Dr. Brandemihl only treated plaintiff since 2012. The ALJ further found that Dr. Brandemihl's opinion conflicts with evidence showing plaintiff engages in some activities of daily living, including sitting on a village council until 2017. (Tr. 464).

Plaintiff argues that the clinical findings reported by Dr. Brandemihl (Tr. 395) "are consistent with his treatment records (Tr. 403, 411-416) and are certainly not 'mild' abnormalities as suggested by the ALJ." (Doc. 8 at PAGEID 1101). Plaintiff contends that these are appropriate medical findings in terms of mental health functioning. (Doc. 8 at PAGEID 1101, citing 20 C.F.R. § 404.1502(g)[7]).

---

[7] Section 404.1502(g) defines "signs" as "one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated."

There are only two treatment notes from Dr. Brandemihl in the record: the initial visit in February 2012 and one follow up on April 5, 2012.[8]  The initial intake note reflects plaintiff's subjective complaints of excessive worry, feeling on edge and hopeless, trouble with memory and focus, depression and anxiety.  On mental status examination, Dr. Brandemihl assessed depressed and anxious mood, a constricted affect, and fair insight, judgment, and impulse control with no other abnormalities.  (Tr. 415).  Dr. Brandemihl diagnosed plaintiff with a generalized anxiety disorder, major depressive disorder, and rule-out panic disorder.  (Tr. 416).  Dr. Brandemihl prescribed Zoloft and encouraged plaintiff to obtain a sleep study.  (Id.).

When seen on April 5, 2012, plaintiff reported continued dysphoria and anxiety with slight improvement.  (Tr. 403).   It does not appear Dr. Brandemihl performed a mental status examination on that date.  (Id.).[9]  Dr. Brandemihl continued plaintiff's medications and reiterated the need for a sleep study.  (Id.).  There are no further records from Dr. Brandemihl in the administrative record.

While plaintiff alleges Dr. Brandemihl's opinion of marked and moderate limitations is consistent with his treatment records, plaintiff has not identified the particular findings she believes supports the psychiatrist's opinion.  Given the sparse record of plaintiff's mental health treatment with Dr. Brandemihl, the ALJ reasonably determined that the limited findings set forth in the February and April 2012 records do not support Dr. Brandemihl's more restrictive findings.

Plaintiff also alleges the ALJ erred by pointing to plaintiff's modest improvement with treatment because he failed to consider "the longitudinal medical record here along with all the

---

[8] These two treatment records are duplicated several times throughout the record in Exhibits 10F, 11F, 15F, and 16F.
[9] There is handwriting next to the heading "Mental Status Exam," which is illegible.  (Tr. 403).

extensive abnormalities supporting the opinions from the treating specialist that documents minimal, temporary improvements." (Doc. 8 at PAGEID 1103). The Court disagrees.

The ALJ considered plaintiff's two recorded visits with Dr. Brandemihl and accurately noted that the improvement reported by the psychiatrist on the second visit was only "slight." (Tr. 464). There is no indication the ALJ overstated plaintiff's improvement or placed undue significance on this "slight improvement" when weighing Dr. Brandemihl's opinion. Moreover, contrary to plaintiff's argument, the ALJ did review the medical evidence of plaintiff's mental impairments over the relevant time period. The ALJ discussed the 2010 findings of consultative examiner Dr. Schulz (Tr. 462-63, 464), which pre-dated Dr. Brandemihl's examinations, as well as 2017 and 2018 counseling records indicating plaintiff was having a good response to medication and was happier, more assertive, and more confident. (Tr. 465, citing Tr. 935, 1013, 1025, 1031). The ALJ properly considered the consistency of Dr. Brandemihl's opinion with the other medical evidence, 20 C.F.R. § 404.1527(c)(2), as well as the relevant longitudinal evidence in weighing Dr. Brandemihl's opinion.

Plaintiff further argues the ALJ erred when he found Dr. Brandemihl's opinion inconsistent based on the psychiatrist's statement that plaintiff had symptoms and limitations since 2006 given Dr. Brandemihl only began treating plaintiff in 2012. Plaintiff is correct that a treating physician's opinion should not be discounted on the basis it is retrospective in nature. *See, e.g., Toscano v. Comm'r of Soc. Sec.*, No. 08-151402009 WL 5217657, at *4 (E.D. Mich. Dec. 30, 2009). However, the ultimate weight attributable to that opinion depends on whether the physician offering the opinion treated the plaintiff during the relevant time period or there is contemporaneously corroborating evidence to support the opinion. *Cf. Morgan v. Comm'r of Soc. Sec.*, No. 1:17-cv-107, 2018 WL 849478, at *10 (S.D. Ohio Feb. 14, 2018), *report and*

11

*recommendation adopted*, 2018 WL 1532528 (S.D. Ohio Mar. 29, 2018) ("[T]o be given significant weight, this retrospective opinion must be supported by relevant, objective evidence that was contemporaneous to the insured period.") (quoting *Stark v. Comm'r of Soc. Sec.*, No. 5:15-cv-477, 2016 WL 1077100, at *6 (N.D. Ohio Mar. 18, 2016) (in turn citing *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 845 (6th Cir. 2004)).  The evidentiary basis for Dr. Brandemihl's opinion is not apparent from his limited notes.  Dr. Brandemihl did not treat plaintiff from 2006 through 2012, and plaintiff points to no other evidence pre-dating Dr. Brandemihl's opinion that would support a 2006 onset of disabling symptoms.  Moreover, plaintiff continued working until 2009, three years after Dr. Brandemihl opined plaintiff's limitations were work preclusive.  The ALJ did not err in determining Dr. Brandemihl's retrospective and conclusory opinion is not entitled to significant weight.

Plaintiff also questions the ALJ's citation to plaintiff's testimony that she sat on the village council until December 2017.  (Tr. 464.)  Plaintiff argues the ALJ placed excessive weight on this activity in assessing Dr. Brandemihl's opinion.

That this activity, on its own, may not demonstrate an ability to do full-time work on a sustained basis does not mean that the ALJ erred in considering it.  *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered [the plaintiff's] ability to conduct daily life activities in the face of his claim of disabling pain.").  *See also Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) ("Although the ability to [perform activities of daily living] is not direct evidence of an ability to do gainful work, '[a]n ALJ may . . . consider [such] activities . . . in evaluating a claimant's assertions of pain or ailments.'").  The ALJ reasonably considered plaintiff's ability to engage in a public facing

position like village council in determining whether Dr. Brandemihl's opinion was entitled to significant weight.

Plaintiff further alleges the ALJ erred in weighing the opinion of the one-time examining psychologist, Dr. Schulz. In October 2010, Dr. Schulz diagnosed plaintiff with a panic disorder without agoraphobia and a depressive disorder. He opined that plaintiff had no impairment in her ability to relate to others; mild impairment in her ability to understand, remember, and follow instructions; mild impairment in her ability to concentrate and maintain attention; and mild limitation in her ability to withstand the stress and pressures of work. (Tr. 244-50).

The ALJ assigned Dr. Schulz's assessment "great weight," finding it generally consistent with the other evidence of record. (Tr. 463). Plaintiff argues the ALJ's weighing of this opinion is flawed because the ALJ in fact imposed greater limitations that those found by Dr. Schulz, and the opinion of Dr. Schulz was vague.

The Court finds no error in the ALJ's weighing of this evidence. The ALJ is not obligated to adopt any medical source opinion verbatim. "Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). "However, if the ALJ accepts a medical opinion but does not include a restriction recommended by that expert in the RFC, the ALJ must explain why he did not do so." *Hankinson v. Comm'r of Soc. Sec.*, No. 2:18-cv-58, 2020 WL 240812, at *2 (S.D. Ohio Jan. 16, 2020).

In this case, the ALJ found Dr. Schulz's opinion was generally consistent with the other record evidence, but he also determined there was persuasive evidence in the record supporting

13

greater restrictions in plaintiff's social functioning and ability to maintain concentration, persistence, or pace. (Tr. 463-65). The ALJ stated:

> The claimant was described as alert and responsive and cooperative toward the examiner, Dr. Schulz (2F at 4 and 5). She reported to Dr. Schulz that she socializes with friends once per month. This appears to be somewhat consistent with her testimony. Medical records indicate that she has difficulty with low self-esteem and excessive worrying (see for example 11F and 20F). However, in 2018, the claimant's psychiatric treatment notes indicate that she reports she is getting better and that she is happier, more assertive, and more confident (20F at 6; 26F, pages 4, 16, and 22). During her evaluation with Dr. Schulz, the claimant did not present any suicidal or homicidal intent. (2F at 4) Her judgment appeared to be sufficient to make life decisions, conduct her own living arrangements, and participate in a treatment (2F at 5). At the hearing, the claimant testified that she does not like to be around people because she does not like having to explain what fibromyalgia is and being touched by others causes her pain that she describes as feeling like a fireball. She asserts that she has panic attacks and in the past, she has had difficulty with suicidal ideation. In addition, the claimant testified at the hearing that she likes to read (she does assert that she has difficulty following along) and plant flowers outside. Therefore, the undersigned [ALJ] finds that the claimant's ability to maintain social functioning and her ability to maintain concentration, persistence, or pace is "moderately" limited, while her ability to understand, remember, or apply information is only "mildly" limited.

(Tr. 465). Plaintiff has failed to address why the ALJ's reasons for imposing *greater* restrictions than those found by Dr. Schulz is not substantially supported by the record.

Plaintiff's first assignment of error is overruled.

### 2. The ALJ's assessment of plaintiff's subjective complaints

In her second assignment of error, plaintiff argues that the ALJ erred in assessing plaintiff's subjective complaints about her mental health limitations. She argues that similar to the ALJ's erroneous assessment of Dr. Brandemihl's opinion based on plaintiff's limited activities of daily living and the clinical and objective evidence, the ALJ erred by finding plaintiff's complaints were not fully supported. (Doc. 8 at PAGEID 1109). Plaintiff also argues that the ALJ fails to explain why he concluded that plaintiff's course of treatment is allegedly inconsistent with her allegations (*Id.*).

14

ALJs are to "consider all of the evidence in an individual's record" and determine whether the individual is disabled by examining "all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the individual's record." SSR 16-3p, 2016 WL 1119029, at *2 (March 16, 2016) (rescinding and superseding SSR 96-7p).  ALJs also evaluate what the agency formerly termed the "credibility" of a plaintiff's statements about his or her symptoms. *See, e.g.*, *Rogers*, 486 F.3d at 246-49.  In March 2016, the agency eliminated its use of the term "credibility" and clarified "that subjective symptom evaluation is not an examination of an individual's character. . . ." SSR 16-3p, 2016 WL 1119029, at *1.  To avoid such mistaken emphasis, this analysis is now characterized as the "consistency" of a claimant's subjective description of symptoms with the record. *See Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 n.3 (6th Cir. 2020) (citing *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016)).

A two-step inquiry applies to symptom evaluation.  The ALJ first determines whether the record contains objective medical evidence of an underlying medically determinable impairment that could reasonably be expected to produce the individual's symptoms.  SSR 16-3p, 2016 WL 1119029, at *3; *see also* 20 C.F.R. § 404.1529(a); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003).  Step two of symptom evaluation shifts to the severity of a claimant's symptoms.  The ALJ must consider the intensity and persistence of the symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities. *See* 20 C.F.R. §§ 404.1529(a) and (c); SSR16-3p, 2016 WL 1119029, at *4.  In making this determination, the ALJ will consider the following:

(i)     Your daily activities;

(ii)      The location, duration, frequency, and intensity of your pain or other symptoms;

(iii)    Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v)      Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi)    Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii)   Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

An ALJ may not consider only objective medical evidence in determining disability unless this evidence alone supports a finding of disability. SSR 16-3p, 2016 WL 1119029, at *5 ("If we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms."); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."). Moreover,

> [i]t is . . . not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

SSR 16-3p, 2016 WL 1119029, at *9. *See also id.* at *7 (noting that the ALJ "will discuss the

factors pertinent to the evidence of record").

At the same time, the ALJ need not cite or discuss every factor used to evaluate the consistency of a plaintiff's description of symptoms with the record evidence. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) ("[T]he ALJ expressly stated that she had considered [the predecessor to SSR 16-3p], which details the factors to address in assessing credibility. There is no evidence that the ALJ failed to do so. This claim therefore lacks merit. . . ."). Further, the ALJ's determination of the consistency of a claimant's subjective complaints with the record evidence is "to be accorded great weight and deference. . . ." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citing *Villarreal v. Sec'y of H.H.S.*, 818 F.2d 461, 463 (6th Cir. 1987)).[10]

The Court finds that the ALJ's evaluation of plaintiff's symptoms is based on substantial evidence. The ALJ reasoned as follows:

> The extent of (physical and mental) limitation alleged by the claimant is largely unsubstantiated by convincing objective medical evidence or clinical findings. The evidence generally does not support the alleged loss of functioning. The claimant testified that she sat on the village council until her term ended in 2017. She asserted that she did not feel she was able to seek reelection because of her physical and mental conditions. As previously stated, the record does not indicate that the claimant has received significant treatment for any of her impairments. Medical records indicate that treatment for the arthritis in her hip consists of office visits in which she receives an injection in her hips that give her relief for up to one year (23F). As for her back, neck, and hip pain physical therapy was recommended to the claimant but she declined because she reported that it would flair up her fibromyalgia. The claimant continues to be able to live independently with her husband. She testified that she is able to pace herself to perform activities of daily living on her good days. She has good days approximately one to two days out of the week. On her good days, the claimant would attempt to plant flowers, try to clean her home, and catch up on the laundry (she cannot fold clothes). The claimant

---

[10] The *Walters* court noted that substantial deference was appropriate largely because of an ALJ's unique observation of a witness's "demeanor and credibility." With the elimination of the term "credibility" in SSR 16-3p, it is questionable whether an ALJ's observations should enjoy deference. At least one Sixth Circuit decision after the enactment of SSR 16-3p, however, has retained the notion of deference to the ALJ in the symptom-consistency context. *See, e.g.*, *Lipanye*, 802 F. App'x at 171 ("It is for the administrative law judge, not the reviewing court, to judge the consistency of a claimant's statements.").

testified that she likes to read. The claimant was seen in October of 2017, at that time it was noted that the claimant's gait was well controlled, her reflexes were slightly increased in all four extremities, and there was some tenderness in the cervical spine (23F at 25-26). . . .

Restricting the claimant to performing the reduced range of light exertion described above adequately addresses the location, duration, frequency, and intensity of the claimant's alleged symptoms, as well as precipitating and aggravating factors, to the extent that such symptoms and aggravating factors are supported by objective medical evidence and clinical findings. There is no evidence of adverse side effects from treatment or medication that would prevent the claimant from performing competitive work activity at the light level of exertion on a regular and continuing basis.

The claimant's treatment history is not consistent with a finding of disability as defined for Social Security purposes. The evidence of record generally does not support the alleged loss of functioning and allegations of disability are not persuasive.

(Tr. 472-73).

Plaintiff contends the ALJ erred in his symptom evaluation because plaintiff's subjective statements are consistent with Dr. Brandemihl's opinion, which the ALJ failed to credit. As discussed above, the ALJ's evaluation of Dr. Brandemihl's opinion is supported by substantial evidence. Therefore, the fact that plaintiff's subjective allegations are consistent with that opinion is not a basis for finding the ALJ erred in his subjective symptoms analysis.

The ALJ also considered plaintiff's course of treatment as inconsistent with her allegations of disabling mental health impairments. The ALJ noted that plaintiff had never been hospitalized for any psychiatric problems. (Tr. 463). She reported that she had attended counseling in 2008 for three months (before her alleged onset date). (*Id.*, citing Tr. 245). The record shows only two instances of treatment with a psychiatrist in 2012 (Dr. Brandemihl). There is a gap between plaintiff's visits with Dr. Brandemihl and counseling sessions in 2017 and 2018, which reflected plaintiff reported "getting better" and was "happier, more assertive, and more confident." (Tr. 465, citing Tr. 935, 1013, 1025, 1031).

18

Courts routinely uphold an ALJ's consideration of the conservative nature of a claimant's treatment as one factor in evaluating a claimant's subjective symptoms. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 638-39 (6th Cir. 2016) (claimant's routine or conservative treatment for allegedly disabling impairments supported ALJ's assessment) (citing *Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) (finding that the ALJ reasonably discounted a doctor's proposed limitations because, among other things, the claimant was receiving conservative treatment)); *McKenzie v. Comm'r of Soc. Sec.*, 215 F.3d 1327, 2000 WL 687680, at *4 (6th Cir. May 19, 2000) (unpublished opinion) ("Plaintiff's complaints of disabling pain are undermined by his non aggressive treatment."). While the extent of treatment pursued does not necessarily translate into the extent to which a claimant is functionally limited, the Court is not persuaded that the ALJ's consideration of plaintiff's level and type of treatment was inappropriate.

The ALJ properly considered the relevant regulatory factors in assessing plaintiff's subjective symptoms, and his decision in this regard finds substantial support in the record. *See* 20 C.F.R. § 404.1529(c)(3). Plaintiff's second assignment of error is overruled.

### 3. The vocational evidence

In her third assignment of error, plaintiff alleges the ALJ erred by posing an improper hypothetical question to the VE. Plaintiff argues the ALJ failed to adequately account for the "moderate" limitations in her ability to concentrate, persist, or maintain pace in the hypothetical question to the VE (and by extension in the RFC), which only restricted plaintiff mentally to (1) simple repetitive tasks; (2) no fast-paced production oriented work or jobs which involve strict production quotas; and (3) jobs involving very little, if any, changes in job duties or work routine

from one day to the next.  (Doc. 8 at PAGEID 1111-13, citing Tr. 508-09 and *Ealy v. Comm'r of Soc. Sec.*, 549 F.3d 504 (6th Cir. 2010)).

Plaintiff's argument is without merit as *Ealy* is distinguishable.  In *Ealy*, the Sixth Circuit held that where the medical opinion evidence establishes that a Social Security plaintiff has specific pace, speed, and concentration limitations, the ALJ must include such speed and pace-based restrictions in his RFC formulation and in the hypothetical questions posed to a VE.  *See Ealy*, 594 F.3d at 516-17.  The plaintiff's psychologist in *Ealy* limited him to "simple, repetitive tasks for two-hour segments over an eight-hour day where speed was not critical."  594 F.3d at 516.  The ALJ adopted the psychologist's opinion and specific limitations but then streamlined the hypothetical question to the VE to include only a limitation to "simple, repetitive tasks and instructions in non-public work settings" and omitted the two-hour pace-based restriction.  *Id*. The Sixth Circuit determined that the ALJ's hypothetical question to the VE did not fully convey the plaintiff's limitations because it omitted the speed and pace-based restrictions the ALJ found the claimant to have.

Plaintiff has identified no medical source who assessed specific or concrete pace-based restrictions like those found in *Ealy* that the ALJ credited but failed to incorporate in the RFC or hypothetical question to the VE.  Plaintiff's moderate limitations in concentrating, persisting, and maintaining pace are reasonably accommodated by the ALJ's RFC and hypothetical question limiting plaintiff to jobs involving unskilled, simple, repetitive tasks; no fast-paced production work or jobs which involve strict production quotas; and jobs involving very little, if any, change in job duties or the work routine from one day to the next.  "Case law in this Circuit does not support a rule that a hypothetical providing for simple, unskilled work is per se insufficient to convey moderate limitations in concentration, persistence and pace."  *Kepke*, 636 F. App'x at 635

20

(finding reliance on *Ealy* to be misguided where the plaintiff failed to cite any evidence in the record that provided for specific, concrete limitations on her ability to maintain concentration, persistence or pace while doing simple, unskilled work). *See also Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 436-37 (6th Cir. 2014) (distinguishing *Ealy* because claimant's moderate limitations in concentration, persistence and pace were conveyed by ALJ's hypothetical limitation to "simple, routine, and repetitive tasks" because psychologist "did not place any concrete functional limitations on [the plaintiff's] abilities to maintain attention, concentration, or pace when performing simple, repetitive, or routine tasks"). The ALJ here accounted for plaintiff's severe mental impairments and moderate limitations in concentration, persistence, and pace by restricting her to "unskilled, simple, repetitive tasks"; "no fast paced production work or jobs involving strict production quotas"; and "limited to performing jobs which involve very little, if any, change in the job duties or the work routine from one day to the next." (Tr. 466). Plaintiff has not shown she suffers from additional mental restrictions supported by the evidence which the ALJ credited but erroneously omitted from the RFC and from the hypothetical to the VE.

Finally, the cases cited by plaintiff in support of her argument are distinguishable. (Doc. 8 at PAGEID 1112-13). In *Vinson v. Comm'r of Soc. Sec.*, No. 2:14-cv-2092, 2016 WL 612534 (S.D. Ohio Feb. 16, 2016), *report and recommendation adopted*, 2016 WL 950957 (S.D. Ohio Mar. 7, 2016), the ALJ adopted the opinion of the state agency consultant who "opined that Plaintiff's stress response was impaired such that her 'tasks should not pressure her to perform against strict time or quantity demands.'" *Id*. at *5. The ALJ, however, omitted a pace limitation from the RFC determination and hypothetical question posed to the VE without explaining this omission. The omission of a specific pace limitation was reversible error under *Ealy*.

In *Daniels v. Astrue*, No. 1:11-cv-806, 2012 WL 3309664, at *9 (N.D. Ohio May 7, 2012), *report and recommendation adopted sub nom. Daniels v. Comm'r of Soc. Sec.*, 2012 WL 3309662 (N.D. Ohio Aug. 13, 2012), the ALJ violated *Ealy* when he found the plaintiff had moderate limitations in concentration, persistence and pace but only restricted her to "low-stress" tasks, which failed to address the speed or pace-based restrictions imposed by her impairments.

Unlike *Vinson* and *Daniels*, the ALJ here included a pace-based limitation to account for plaintiff's moderate limitations in pace by limiting plaintiff to "no fast paced production work or jobs involving strict production quotas." (Tr. 466). Plaintiff's third assignment of error is overruled.

**III. Conclusion**

For these reasons, plaintiff's Statement of Errors (Doc. 8) is **OVERRULED**, and the Commissioner's non-disability finding is **AFFIRMED. IT IS THEREFORE ORDERED** that judgment be entered in favor of the Commissioner, and this case is closed on the docket of the Court.

Date: 6/6/2023

Karen L. Litkovitz
Chief United States Magistrate Judge